## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

**KEITH RAY**,

      **Petitioner,**

                                  **Case No.: 1:15-cv-06712**

**v.**

**BART MASTERS,**
**Warden, FCI-McDowell,** [1]

      **Respondent.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court is Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, (ECF No. 2). This case is assigned to the Honorable David A. Faber, United States District Judge, and was referred to the undersigned United States Magistrate Judge by Standing Order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, **GRANT** Respondent's Motion to Dismiss, and **DISMISS** this action, with prejudice, and

---

[1] Petitioner was incarcerated in Federal Correctional Institution McDowell in Welch, West Virginia when he filed the instant petition, and he correctly named as respondent Bart Masters, the warden at that facility. Since that time, Petitioner was transferred to Federal Correctional Institution Marianna where he is presently in custody. *See* BOP inmate locator at www.bop.gov/inmateloc/. Pursuant to Federal Rule of Civil Procedure 25(d), the warden of the facility in which he is in custody, Nicole English, shall be substituted as respondent in this case. Further, despite the fact that petitioner is no longer in custody in the Southern District of West Virginia, the court retains jurisdiction over this matter. "Jurisdiction is determined at the time an action is filed; subsequent transfers of prisoners outside the jurisdiction in which they filed actions do not defeat personal jurisdiction." *United States v. Edwards*, 27 F.3d 564 (4th Cir. 1994) (citing *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir.1990)).

remove it from the docket of the Court.

## I.      **Introduction**

Petitioner is a federal inmate incarcerated in Federal Correctional Institution Marianna in Marianna, Florida. On April 7, 2013, while incarcerated in Federal Correctional Institution Schuylkill in Minersville, Pennsylvania, Petitioner received an incident report, stating that an officer discovered a handmade metal weapon in the window frame of Petitioner's cell during a random search. (ECF No. 2-1 at 1). The cell housed Petitioner and one other inmate, who were both working in the kitchen at the time of the search. (*Id.* at 1, 13-14). Within a week of the incident, Petitioner had a hearing before a Discipline Hearing Officer (DHO). (*Id.* at 8). Petitioner stated that he only moved into the cell "six days before," had no knowledge of the weapon, and was not a violent individual. (*Id.*). The DHO reviewed a photograph of the weapon and the incident report and ultimately concluded that the "greater weight of the evidence/ some facts" supported a finding that Petitioner committed the prohibited act set forth in Code 104 - possession of a dangerous weapon. (*Id.* at 9). The DHO noted that the offense threatened the security, orderly running of the institution, safety of both staff and inmates, and could lead to serious injury. (*Id.*). Therefore, the DHO sanctioned Petitioner to 60 days of disciplinary segregation, disallowance of 41 days of good conduct time, forfeiture of 100 days of non-vested good conduct time, and revocation of telephone and visiting privileges for 8 months. (*Id.*).

After exhausting his administrative remedies, *see* (ECF No. 7-1 at 4), Petitioner filed the instant § 2241 petition seeking expungement of the disciplinary offense from his inmate record and the restoration of the good conduct time that he lost as a result of the infraction. (ECF No. 2 at 8). He contends that the DHO did not have sufficient evidence

to find him guilty of the offense, the credibility of the confidential informant that he believes was used in his case was questionable, his right to due process was violated, and the penalty that he received was too severe. (*Id.* at 6-7).

The undersigned entered an Order directing Respondent to show cause why the relief sought by Petitioner should not be granted. (ECF No. 6). Respondent filed a substantive response and incorporated motion to dismiss, to which Petitioner filed a response. (ECF Nos. 7, 11). As set forth below, the undersigned finds that Petitioner clearly is not entitled to relief in this action; therefore, an evidentiary hearing is unnecessary, and the petition is ripe for dismissal.

## II.   Discussion

### A.  Due Process

Petitioner claims that he was denied due process because the DHO did not review video surveillance footage in his case. (ECF Nos. 2 at 7, 11 at 3). He contends that someone planted the weapon in his cell and the footage would show that "a number of other inmates [went] in and out of [his] cell, on the day of the incident." (*Id.*).

Petitioner has a constitutionally protected liberty interest in his good conduct time, as such time impacts the duration of his sentence. *See, e.g., Marino v. Masters*, No. 1:12-cv-00393, 2015 WL 66511, at *5 (S.D. W. Va. Jan. 5, 2015) (citing *Ponte v. Real,* 471 U.S. 491, 495 (1985)). Accordingly, the BOP must follow certain minimal requirements of procedural due process before imposing discipline upon Petitioner that results in the loss of good conduct time. *See Wolff v. McDonnell,* 418 U.S. 539 (1974). In *Wolff*, the United States Supreme Court determined that in such cases, a prisoner has the right to (1) receive written notice of the charges at least 24 hours prior to disciplinary hearing, (2) call witnesses and present documentary evidence in his defense unless it would be unduly

3

hazardous to institutional safety or correctional goals, and (3) receive a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 564–66.

Here, Petitioner concedes that he received written notice of the charges more than two weeks before the DHO hearing. (ECF No. 11 at 4-5). He was permitted to call witnesses and make a statement on his own behalf, and was even provided a staff representative to assist him in preparing and marshaling his defense. Petitioner also confirms that he received a written statement from the DHO explaining the basis of his findings and the reason for the particular punishment imposed. (*Id.*). Nevertheless, Petitioner contends that these steps were insufficient to provide procedural due process, because prior to his disciplinary hearing, he asked his staff representative to review the surveillance footage of his housing unit for exculpatory evidence, but the representative "refused." (*Id.* at 3). Moreover, the representative never asked the DHO to review the tape, and the DHO failed to review the footage "even after [Petitioner] requested." (*Id.*).

Petitioner's contention that principles of procedural due process required the staff representative or the DHO to review the surveillance film is without merit. To start, the record does not corroborate Petitioner's claim that he requested the surveillance videotape prior to or at his disciplinary hearing. According to the paperwork, when initially presented with the charges, Petitioner stated only that the weapon was not his, that he had been in the cell for a mere six days, and he did not "know nothing about it." (ECF No. 7-1 at 3, 6). At the hearing, he reiterated that he "had no knowledge of the weapon in his cell" and added that he was "not a violent person." (ECF No. 11 at 11). Considering that the DHO recorded Petitioner's statement verbatim, it seems unlikely that repeated requests by Petitioner for review of the surveillance videotape would have

4

gone undocumented. Instead, the record indicates that Petitioner did not think of the potential for videotaped evidence until after he examined the DHO's report.

When appealing the DHO's decision, Petitioner surmised for the first time that the weapon was left in his cell by the prior occupant or, in the alternative, that another inmate planted the weapon in his cell while he and his cellmate were working in the kitchen. (ECF No. 2-1 at 13-14). A review of the disciplinary and appeal documents suggests that Petitioner misread the DHO's report and erroneously arrived at his alternate theory. He apparently believed that the search of his cell was triggered by information from a confidential source.[2] (*Id.*). Petitioner then speculated that the confidential source planted the knife in Petitioner's cell and the video surveillance footage would show the confidential source entering the cell. Thus, it was not until nearly a month after the disciplinary hearing that the subject of video surveillance footage was mentioned in the record.

In addition, Petitioner does not offer any facts or evidence to support his bald assertion that video surveillance footage of his housing unit would offer exculpatory evidence. Although he speculates that the footage would show the confidential source entering his cell, there is no factual basis for that theory. Indeed, the record suggests otherwise. When responding to Petitioner's appeal of the DHO's decision, the Regional Director pointed out that *there was no confidential source*. (*Id.* at 10). Instead, the weapon was found fortuitously during a random search of Petitioner's cell. Consequently, there is no reason to believe that video surveillance footage, if any existed, would have

---

[2] While the DHO's report contains a section concerning confidential information or a confidential informant, it was noted to be "N/A" (not applicable) in his case. (ECF No. 2-1 at 8). The Regional Director advised Petitioner of that fact in response to Petitioner's appeal. (*Id.* at 10).

documented the illusory confidential source entering or exiting Petitioner's cell.

In any event, even if Petitioner did ask the DHO to review the footage and the DHO declined, the undersigned does not find a violation of Petitioner's due process rights. *See Jenkins v. Warden, FCI Edgefield*, No. CIV.A. 5:14-03687, 2015 WL 5474880, at *8 (D.S.C. Sept. 16, 2015), *aff'd,* 644 F. App'x 229 (4th Cir. 2016), *cert. denied sub nom. Jenkins v. Atkinson*, 137 S. Ct. 236 (2016) (finding that even if an inmate requests video footage in preparation for a disciplinary hearing, the inmate "does not have a constitutional right to access the prison video footage in a disciplinary case."). The Supreme Court in *Wolff* was clear that "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Wolff*, 418 U.S. at 556 (citations omitted). To the contrary, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply;" rather, "there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Id.* (internal citations omitted).

"*Wolff* stands for the proposition that a prisoner is not guaranteed unfettered access to exculpatory evidence in the context of a disciplinary hearing." *Johnson v. Warden, FCI Williamsburg*, No. CA 1:13-3347-JFA-SVH, 2014 WL 4825926, at *2 (D.S.C. Sept. 24, 2014), *aff'd sub nom. Johnson v. Cruz*, 597 F. App'x 161 (4th Cir. 2015). The "requirements of due process are satisfied if **some evidence** supports the decision by the prison disciplinary board to revoke good time credits." *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455, 105 S. Ct. 2768, 2774, 86 L. Ed. 2d 356 (1985). "'Some evidence' does not in any way imply that prison disciplinary

6

bodies must consider all possible evidence." *Landry v. Adams*, No. 2:06-cv-151, 2007 WL 869224, at \*4 (E.D. Va. Mar. 19, 2007), *report and recommendation adopted*, No. 206-cv-151, 2007 WL 2416534, at \*5 (E.D. Va. Aug. 17, 2007) ( finding that a petitioner's due process rights were not violated by the absence of video surveillance footage where petitioner asserted no facts supporting his claim that exculpatory evidence existed in the video and "some evidence" supported the DHO's decision); *also see Wallace v. Warden, USP Hazelton,* 2013 WL 3819928 (N.D. W. Va. July 23, 2013) (holding that a DHO's use of still photographs and testimony to establish a violation fulfilled the "some evidence" standard despite the DHO's failure to review videotape evidence); *Wlash v. Berkebile*, No. 5:09-cv-00199, 2011 WL 2417136, at \*5 (S.D.W. Va. June 13, 2011) (the failure of a DHO to review video surveillance footage at the petitioner's request was not a constitutional violation where "some evidence" supported the DHO's decision); *Henderson v. Commonwealth of VA,* 2008 WL 204480, at \*11 (WD.Va. Jan. 23, 2008) (finding that a prisoner's due process rights were not violated at a disciplinary hearing when the DHO failed to review video surveillance footage, because "some evidence" supported the decision); *and Raynor v. Jackson,* 2006 WL 3359433, at \*3 (W.D.N.C. Nov. 20, 2006) (finding that "some evidence" supported a DHO's conclusion; therefore, petitioner's due process rights were not violated when videotaped evidence was not available nor reviewed as part of the disciplinary hearing).

Here, as discussed in additional detail below, the record demonstrates that the evidence presented by the investigating officer to the DHO was sufficient to support the finding of a violation and the punishment Petitioner received. As such, the undersigned **FINDS** no violation of Petitioner's right to due process.

### B. Sufficiency of the Evidence

Petitioner also presents the related argument that the evidence against him was insufficient to charge him with possession of a weapon. (ECF Nos. 2 at 6, 11 at 3). In his case, the DHO primarily considered the incident report prepared by the investigating officer, which documented the officer's discovery of a homemade weapon in the window frame of the cell that Petitioner shared with one other individual. (ECF No. 7-1 at 15). The DHO also reviewed a photograph, depicting a sharpened metal weapon as described in the incident report. (*Id.* at 8, 15). The DHO found that the information from the officer was credible, as he "derived no known benefit by providing false information." (*Id.* at 15). The DHO cited the BOP's policy that inmates share collective responsibility for contraband discovered in a common area of their assigned cell/living area; therefore, because the weapon was found in a common area of the cell, and neither inmate accepted responsibility for the weapon, an equal share of responsibility supported the charge against Petitioner. (*Id.*).

This court previously considered a similar case in which a petitioner claimed that he should not be held accountable for a weapon found in his cell, because there was no evidence that it belonged to him. *Edmonds v. Ziegler*, No. 5:10-cv-01374, 2014 WL 321050, at *4 (S.D. W. Va. Jan. 29, 2014). The petitioner contended that he was unaware of the weapon and that it must have been left there prior to his assignment to the cell. *Id.* Like the present case, the DHO in *Edmonds* relied upon the incident report, the investigating officer's written statement documenting that he found the sharpened piece of metal in one of the holes underneath the sink in the petitioner's cell, and a photograph of the weapon. *Id.* at 4-5. As noted by the court, numerous cases support a finding that when a weapon is found in an inmate's cell, it provides "some evidence" of the inmate's

constructive possession of the weapon so long as relatively few inmates have access to the area. *Id.* at *5 (collecting cases); *see, also, McClung v. Hollingworth,* No. 06-6699, 2007 WL 1225946 (4th Cir. Apr. 26, 2007).

In accordance with the above precedent, the undersigned finds that "some evidence" supports the DHO's decision. Petitioner shared a cell with one other inmate. The weapon was found in a window frame of the cell and attributed to both individuals. The record is devoid of evidence indicating that Petitioner's cell was akin to a common area; such as, a "kitchen or television lounge in which the constructive possession rule has no application." *Id.* at *3. Like the circumstances in *McClung,* the weapon in this case was discovered in an area of the cell not readily accessible by passers-by, making it highly improbable that another inmate entered the cell, removed the window frame, hid the weapon, replaced the window frame, and exited the cell—all the while undetected—as Petitioner suggests. *Id.* (stating that "the evidence as a whole tended to show that gaining access to the interior of McClung's cell, and the area beneath the cell's desk, would have been difficult for another inmate" to accomplish without detection). Petitioner has never offered any witness to testify that someone other than Petitioner and his cellmate entered or exited the cell. *Id.* at *2 (stating that "in order to have planted the weapon in the cell, another inmate would have had to have been fully inside the cell for some period of time."). Similarly, Petitioner offers no evidence to establish that others had access to his cell, that the cell was left unlocked, or that the other inmates roamed freely about the area to support a claim that the constructive possession rule should not apply in his case. *Id.* at *2-3 (finding that although the cells remained unlocked during the day and all areas of the unit were not always monitored, "McClung provided no evidence that showed that any other inmate had actually gained access to his cell or that he had requested that his cell

9

be locked because he feared such occurrence."). Moreover, even if Petitioner's cell was unlocked and empty at some point during the six days he lived there, possibly allowing someone else to enter and hide a weapon, the "Due Process Clause does not require continuous lock-down before allowing punishment for possession of contraband found in inmates' cells." *Id.* at *3.

This case is readily distinguishable from cases in which courts determined that constructive possession did not support a disciplinary charge. For instance, in *Delgado v. Wilson*, No. 3:11-cv-165, 2011 WL 6750768, at *1 (E.D. Va. Dec. 23, 2011), constructive possession of contraband did not supply "some evidence" to support a disciplinary charge where the housing unit was an open dormitory-style layout of cubicles, without doors or walls in the front of each cubicle, and all 150 inmates could freely enter any of the areas at any time of day. In that case, the petitioner claimed that he had personally witnessed other inmates throwing or hiding contraband in other cubicles during routine searches. *Id.* In another case, *Broussard v. Johnson,* 253 F.3d 874, 877 (5th Cir. 2001), constructive possession did not supply "some evidence" of guilt when the contraband at issue was found in the kitchen area, which was accessible to 100 inmates.

Unlike the foregoing examples, Petitioner has not supplied any facts or evidence to negate the DHO's finding that the weapon should be equally attributed to him and his cellmate because it was found in their exclusive domain. "Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact." *Stach v. Shearin*, No. WDQ-02-3558, 2003 WL 24012408, at *3 (D. Md. May 30, 2003), *aff'd*, 80 F. App'x 821 (4th Cir. 2003) (citing *Kelly v. Cooper,* 502 F.Supp. 1371 (E.D.Va.1980)). Rather, "[t]he findings will only be disturbed when unsupported by any evidence, or wholly arbitrary and capricious." *Id.* (citing *Smith v. Rabalais,* 659 F.2d 539 (5th Cir.1981)). As stated by

the Supreme Court, "[t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." *Hill*, 472 U.S. at 457. In *Hill*, the Court stated that "[a]lthough the evidence in this case might be characterized as meager, and there was no direct evidence identifying any one of three inmates ... the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.* at 457.

Therefore, the undersigned **FINDS** that "some evidence" supports the DHO's finding that Petitioner committed the prohibited act.

### C.  Severity of Sanctions

Petitioner's final claim is that "the DHO in this case was [too] severe in accordance with BOP policy." (ECF No. 2 at 7). Petitioner was charged with possessing a dangerous weapon in violation of Code 104. (ECF No. 2-1 at 9). Code 104 is designated as a "greatest severity level prohibited act" by the BOP. *See* 28 C.F.R. § 541.3, Table 1. Among the available sanctions for such conduct is forfeiture of up to 100% of good conduct time; disallowance of good conduct time (ordinarily between 27-41 days); disciplinary segregation up to 12 months; and loss of privileges, including telephone and visiting privileges. *Id.* The DHO in this case sanctioned Petitioner to disciplinary segregation for 60 days, disallowance of 41 days of good conduct time, forfeiture of 100 days of non-vested good conduct time, and loss of telephone and visiting privileges for 8 months. (ECF No. 2-1 at 9).

Therefore, the undersigned **FINDS** that the sanctions imposed fell within the range of those authorized by BOP regulations and Petitioner's claim that the DHO was

too severe in accordance with BOP policy is without merit. *See, e.g., Wheeler v. Perdue*, No. 1:14-cv-36, 2015 WL 366412, at *2 (N.D. W. Va. Jan. 27, 2015) (citing *Wallace v. Ebbert,* 505 Fed. App'x 124, 125 (3d Cir. 2012) (affirming district court judgment that rejected allegation of "harsh and unjust" sanctions, because the sanctions "fell within the range of acceptable punishments outlined in the applicable regulations")); *see also Valenteen v. Driver*, No. 1:08-cv-89, 2009 WL 304835, at *3 (N.D.W. Va. Feb. 6, 2009) ("The BOP is responsible for administering the federal prison system and, therefore, has the authority to discipline prisoners. Consequently, the BOP has developed rules for inmate discipline. The sanctions imposed on Valenteen fall within the sanctions authorized by 28 C.F.R. § 541.13 and this Court will not disturb the correct and orderly operation of the BOP.") (internal citations omitted); *West v. Williams*, No. 2:15-cv-10, 2015 WL 5042158, at *6 (N.D.W. Va. Aug. 25, 2015).

### III.   <u>Proposal and Recommendations</u>

For the aforementioned reasons, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that Petitioner's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 2) be **DENIED,** and that this action be **DISMISSED,** with prejudice, and removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this

Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Faber, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner and Respondent.

**FILED:**  February 13, 2107

_____
Cheryl A. Eifert
United States Magistrate Judge

13